UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

CITIZENS UTILITY BOARD,

       *Plaintiff,*

v.

COMMONWEALTH EDISON COMPANY,
an Illinois corporation,

       *Defendant.*

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Citizens Utility Board ("CUB" or "Plaintiff") brings this lawsuit in its capacity as statutory representative of Illinois utility consumers, 220 ILCS 10/1 *et seq.*, against Defendant Commonwealth Edison Company ("ComEd" or "Defendant"). Plaintiff alleges as follows upon personal knowledge as to itself and its own acts and experiences, and, as to all other matters, upon information and belief.

## PARTIES

1.    Plaintiff Citizens Utility Board is a nonprofit corporation created by the Illinois Citizens Utility Board Act ("Act") to represent the interests of utility consumers in Illinois.

2.    To carry out its statutory mandate, the Act provides CUB with the authority and power to "intervene as a party or otherwise participate on behalf of utility consumers in any proceeding which affects the interest of utility consumers" and to "represent the interests of utility consumers before the Illinois Commerce Commission . . . the courts . . . and other public bodies." 220 ILCS 10/5(d), (e). The Act further states that the representation of utility consumers in Illinois is a "statewide interest and not a private or special concern." 220 ILCS 10/2.

3.    CUB takes its statutory mandate seriously. Since it was established thirty-six

years ago, CUB has initiated or intervened in countless proceedings on behalf of Illinois utility consumers and, through litigation and advocacy before public bodies and the courts, CUB has secured more than $20 billion in savings and refunds for utility consumers in Illinois.

4. Defendant Commonwealth Edison Company is a corporation organized and existing under the laws of Illinois with its principal place of business located at 440 South LaSalle Street, Suite 3300, Chicago, Illinois 60605.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1331 because they arise under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*. This Court may exercise jurisdiction over the remaining claims under 28 U.S.C. § 1367.

6. The Court has personal jurisdiction over Defendant ComEd because it is a corporation incorporated and existing under the laws of the State of Illinois and has its headquarters in this District. Further, Defendant purposefully directed its conduct at Illinois and such conduct was designed to create an injury in Illinois and this District.

7. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant both maintains its headquarters and conducts significant business in this District.

## FACTUAL ALLEGATIONS

8. On July 17, 2020, Defendant ComEd entered into a Deferred Prosecution Agreement ("DPA") with the United States Attorney for the Northern District of Illinois, which is attached hereto as Exhibit 1, inclusive of its Attachments A-C.

9. Attachment A to the DPA contains a Statement of Facts; ComEd "agree[d] and stipulate[d]" that the information stated therein was "true and accurate." *See* DPA at A-1. The

Statement of Facts further states that "ComEd admits, accepts, and acknowledges that it is responsible for the acts of its current and former officers, directors, employees, and agents as set forth below." *Id.* Those stipulated facts, contained in pages A-1 through A-12 of the DPA, are expressly referenced and incorporated as if set forth fully herein.

10. While utility consumers would always have been harmed by unfairly high rates, the harm is particularly acute this year, as hundreds of thousands of Illinoisans have lost their jobs due to the coronavirus pandemic. Many Illinois residents and businesses have fallen behind on their utility bills. ComEd, meanwhile, continues to reap the benefits of its nearly decade-long scheme—even after admitting what it has done.

11. Based upon this course of conduct, Plaintiff CUB, in its capacity as statutory representative of all Illinois utility consumers, brings this complaint against Defendant ComEd for violations of 18 U.S.C. §§ 1962(c)–(d), civil conspiracy, and unjust enrichment.

## COUNT I
### Violation of 18 U.S.C. § 1962(c)

12. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

13. 18 U.S.C. § 1962(c) provides that "[I]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate . . . commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity. . . ."

14. Defendant is capable of holding a legal or beneficial interest in property, and, therefore, is a "person" within the meaning of 18 U.S.C. § 1961(3).

### The RICO Enterprise

15. At all relevant times, as described in the DPA, ComEd (through its executives, employees, and agents), lobbyists, public officials, and consultants were associated in fact and

constituted an "enterprise," as defined by 18 U.S.C. § 1961(4). *See* DPA at A-3 to A-4.

16. This enterprise was engaged in activities that affected interstate commerce. This enterprise shall be referred to here as the "ComEd Enterprise." The ComEd Enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise: a nine-year-long "quid pro quo" scheme. *Id.*

17. The primary purpose of the ComEd Enterprise was mutual enrichment at the expense of Illinois utility consumers: to produce undue influence over the Illinois General Assembly for the financial and political benefit of ComEd, and the enrichment of ComEd Enterprise associates. *See* DPA at A-12.

18. Defendant and other members of the ComEd Enterprise willfully and intentionally violated numerous state and federal laws with the goal of obtaining money and political power, directly and indirectly, through a pattern of racketeering activities composed of numerous offenses, including, but not limited to, acts of bribery in violation of 18 U.S.C. § 201(b)(1), 720 ILCS 5/33-1, and 18 U.S.C. §§ 1343, 1346. *See* DPA at A-3 to A-12.

19. The ComEd Enterprise had a clear decision-making hierarchy, with ComEd executives at the top. ComEd admits that it participated in and controlled the ComEd Enterprise by providing financial benefits to ComEd Enterprise associates in exchange for favorable legislation, and that it directed what that legislation should be. *See* DPA at A-3, A-12.

20. The pattern of racketeering activity conducted by members of the ComEd Enterprise is distinct from ComEd itself, as ComEd could not have reached its purpose of exercising power over the Illinois General Assembly without cooperation from other members of the ComEd Enterprise. *See* DPA at A-6, A-9, A-12.

21.   This continuous scheme was successful, realizing multiple legislative feats in the Illinois General Assembly: the passage of the Energy Infrastructure and Modernization Act ("EIMA") in 2011, amending EIMA in 2013, and renewing the formula rate structure in both 2014 and 2016. *See* DPA at A-2.

22.   Moreover, there exist unnamed parties who are current or former members of the ComEd Enterprise. Although they likely maintain discoverable records and will be called upon as witnesses, they are not necessary parties where the court could not accord complete relief among Illinois utility consumers and ComEd.

### Effects on Interstate Commerce

23.   The ComEd Enterprise conducted its racketeering activity, in part, using interstate wire communications, including by use of telephones and by electronic transfers of funds, as discussed below. Further, the ComEd Enterprise impacted electric line systems, which are instrumentalities of interstate commerce. Instrumentalities of interstate commerce need not stretch across state lines. 29 C.F.R. § 776.29(b); *see* DPA at A-3 to A-9.

24.   Defendant, along with the ComEd Enterprise, conspired to act together, and, in association with others, knowingly and repeatedly committed the criminal acts in furtherance of and for the purpose of enriching ComEd both financially and politically and to otherwise further the ends of the ComEd Enterprise.

### Predicate Acts of Racketeering Activity

25.   Defendant and other members of the ComEd Enterprise willfully and intentionally violated numerous state and federal laws with the goal of obtaining money and political power, directly and indirectly, through a pattern of racketeering activities composed of numerous indictable offenses, including, but not limited to, acts of bribery in violation of 18 U.S.C. §

201(b)(1), 720 ILCS 5/33-1, and 18 U.S.C. §§ 1343, 1346. *See* DPA at A-3 to A-12.

26. To further the purpose of the ComEd Enterprise, which was to pass legislation that garnered substantial financial benefits and political power to ComEd, Defendant agreed to and did conduct and participate in the conduct of the ComEd Enterprise's affairs through a pattern of racketeering activity.

**Predicate Acts Under 18 U.S.C. § 201**

27. 18 U.S.C. § 201(b)(1) prohibits a person from "directly or indirectly, corruptly giv[ing], offer[ing] or promis[ing] anything of value to any public official or person who has been selected to be a public official . . . with intent . . . to influence any official act[.]"

28. During each of the twelve-month calendar years from 2011 to 2019, Illinois received federal benefits in excess of $10,000, and the ComEd Enterprise includes agents of the State. *See* DPA at A-2.

29. In furtherance of the ComEd Enterprise's purpose, Defendant made indirect payments to Enterprise associates—who performed little or no work for ComEd—totaling approximately $1,324,500 from 2011 to 2019 so that they would influence legislation beneficial to ComEd. *See* DPA at A-3 to A-12.

30. As ComEd has admitted, this scheme included multiple forms of bribery. *See id.*

31. These activities occurred from 2011 until 2019. *See id.*

**Predicate Acts Under 720 ILCS 5/33-1**

32. Under Illinois law, "A person commits bribery when: (a) With intent to influence the performance of any act related to the employment or function of any public officer, public employee, juror or witness, he or she promises or tenders to that person any property or personal advantage which he or she is not authorized by law to accept[.]" 720 ILCS 5/33-1.

6

33. Furthermore, "bribery is a Class 2 felony," *id.*, where "[t]he sentence of imprisonment shall be a determinate sentence of not less than 3 years and not more than 7 years." 730 ILCS 5/5-4.5-35(a).

34. As discussed in the previous section and stated in the DPA, Defendant, in concert with the ComEd Enterprise, bribed elected officials in order to influence the passage of legislation beneficial to ComEd in the Illinois General Assembly.

35. This occurred through retaining paid "subcontractors" for little or no work, appointing board members, retaining a law firm, and hiring interns, all done with the intent to persuade elected officials to protect ComEd's interests in the Illinois General Assembly. *See* DPA at A-3 to A-12.

### Predicate Acts Under 18 U.S.C. §§ 1341, 1346

36. Defendant, through the ComEd Enterprise, intentionally used acts of artifice or deceit to deprive utility consumers of honest services. At all times, it was reasonably foreseeable that interstate wires would be used to further acts of bribery.

37. Defendant ComEd knew that it would use emails and interstate phone calls to further its bribery scheme, thereby transmitting electronic signals and oral communications across interstate wires to communicate. Arranging and paying a "quid-pro-quo" bribe as described in the DPA is exactly the type of conduct honest services fraud is meant to capture.

38. Specifically, Defendant ComEd made indirect payments to ComEd Enterprise associates—who performed little or no work for ComEd—totaling approximately $1,324,500 from 2011 to 2019. *See* DPA at A-3 to A-12.

39. Certain former ComEd executives designed these payment arrangements in part to conceal the size of payments made to the associates of elected officials, and to assist ComEd in

denying responsibility for oversight of these associates, who performed little or no work for ComEd. *See* DPA at A-5.

40. These payments undoubtedly took place over interstate wires. Discovery will allow the exact dates, times, and places to be uncovered.

41. These bribery payments were used to circumvent the Illinois General Assembly's democratic process and deny ComEd users a fair and honest electricity delivery rate-setting procedure.

### Pattern of Racketeering Activity

42. These predicate acts were related to one another as part of the common scheme to pass legislation that yielded both profit and political power for ComEd, while enriching other ComEd Enterprise members who furthered this purpose.

43. A pattern of racketeering activity requires at least two predicate acts. Here, Defendant, along with the ComEd Enterprise, has committed dozens (if not hundreds) of acts over nine years, thereby establishing a pattern.

44. Not only did the ComEd Enterprise commit at least dozens of predicate acts, but through both bribery and Honest Services Wire Fraud, the ComEd Enterprise was also able to get legislation passed—including EIMA and its amendments—with provisions beneficial to ComEd. *See* DPA at A-12.

45. EIMA, its amendments, and the favorable formula rate structure are still in effect today, continuing to benefit Defendant ComEd at the expense of utility consumers in Illinois.

46. This unlawful conduct constituted a continuous pattern of racketeering activity beginning in or around 2011 through 2019 and would have continued but for the Federal Bureau of Investigation's investigation into ComEd and the July 2020 Deferred Prosecution Agreement.

47. Utility consumers have been the victims of this conduct since the passage of EIMA in 2011. They were, and continue to be, injured by the ComEd Enterprise's racketeering activities.

**Injuries to Utility Consumers' Business and Property**

48. The described racketeering activities and violations of 18 U.S.C. § 1962(c) and the described conspiracy in violation of 18 U.S.C. § 1962(d) directly and proximately caused utility consumers to be injured in their business and property.

49. The ComEd Enterprise's racketeering activities secured the enactment of EIMA and its amendments, thereby directly resulting in and proximately causing Illinois utility consumers being compelled to pay—at the least—in excess of $150 million more for their electricity delivery from 2011 to the present. EIMA and its amendments were passed out of committee only with cooperation from the ComEd Enterprise, and were passed into law with narrow vote margins which could not have been obtained without the support of ComEd Enterprise members, obtained through ComEd's bribery. *See* DPA at A-2, A-12.

50. The injuries to utility consumers were a foreseeable consequence of Defendant's and the ComEd Enterprise's racketeering activities and violations of 18 U.S.C. § 1962(c) and their conspiracy in furtherance of those racketeering violations, in violation of 18 U.S.C. § 1962(d).

51. Specifically, in influencing the passage of EIMA, the ComEd Enterprise secured the formula which allows ComEd to annually increase the delivery rates it charges consumers for electricity with reduced regulatory oversight.

52. Since the passage of EIMA, ComEd gained additional formula benefits which have increased and continue to increase consumer delivery prices.

53. Under 18 U.S.C. § 1964(c), utility consumers are entitled to treble their damages, plus interest, costs, and reasonable attorneys' fees.

## COUNT II
### Violation of 18 U.S.C. § 1962(d)

54. Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

55. 18 USC § 1962(d) states that "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

56. As described throughout, and in detail above, even if it did not direct or manage the affairs of the ComEd Enterprise, Defendant conspired to commit the outlined predicate acts in violation of § 1962(c), including acts violating 18 U.S.C. § 201, 720 ILCS 5/33-1, and 18 U.S.C. §§ 1343, 1346.

57. Defendant acted knowingly at all times when agreeing to facilitate the activities of the ComEd Enterprise and its directors.

58. Utility consumers were deprived of money and property that they would not otherwise have lost. As direct and proximate result of Defendant's racketeering activities, utility consumers have been injured in their business and property by paying increased delivery charges to Defendant.

59. Under 18 U.S.C. § 1964(c), utility consumers are entitled to treble their damages, plus interest, costs, and reasonable attorneys' fees.

## COUNT III
### CIVIL CONSPIRACY

60. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

61. Defendant conspired and agreed with Enterprise members to exchange no-show

jobs for ComEd Enterprise associates and other benefits for those ComEd Enterprise members' aid in passing EIMA and its amendments into law.

62. The direct and proximate result of Defendant's conspiracy with ComEd Enterprise members, including its unlawful conduct in furtherance of that conspiracy, was to deprive utility consumers of their business and property, mainly in the form of ComEd's delivery service rate increases.

63. Utility consumers paid higher rates as a result of EIMA and the formula rate amendments being passed by the Illinois General Assembly, which was due to Defendant's bribery scheme as described in the DPA.

## COUNT IV
## UNJUST ENRICHMENT

64. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

65. From 2011 to the present, ComEd has unjustly retained delivery rate charges from its consumers. The retention of these charges is unjust due to ComEd's illegal efforts in the passage of EIMA and its amendments.

66. ComEd's retention of these illegally conferred benefits violates fundamental principles of justice, equity, and good conscience.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff CUB respectfully requests that this Court enter judgment in its favor and enter an order:

A. Declaring that Defendant has engaged in unlawful conduct in violation of 18 U.S.C. § 1962(c);

B. Declaring that Defendant has engaged in unlawful conduct in violation of 18 U.S.C. § 1962(d);

C. Declaring that Defendant has been unjustly enriched by its conduct;

D. Directing Defendant to pay restitution of all benefits and disgorge all profits unjustly retained to utility consumers;

E. Declaring that Defendant has engaged in an unlawful civil conspiracy;

F. Directing Defendant to pay all damages caused by their civil conspiracy to utility consumers;

G. Awarding treble and punitive damages as appropriate;

H. Awarding injunctive relief as necessary to protect the interests of utility consumers;

I. Awarding Plaintiff its costs and expenses in this litigation, including reasonable attorneys' fees and expert fees; and

J. Awarding such other and further relief as the Court deems equitable and just.

## REQUEST FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

Dated: October 29, 2020

/s/ Jay Edelson
One of Plaintiff's Attorneys

Julie Soderna
jsoderna@citizensutilityboard.org
CITIZENS UTILITY BOARD
208 South LaSalle Street, Suite 1760
Chicago, Illinois 60604
Tel: (312) 263-4282

Jay Edelson
jedelson@edelson.com
Ari J. Scharg
ascharg@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Michael Ovca
movca@edelson.com

EDELSON PC
350 North LaSalle, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378

Pat Quinn
Attorney at Law
216 N Jefferson, Suite 200
Chicago, Illinois 60661

Jonah Orlofsky
jorlofsky@orlofskylaw.com
Law Offices of Jonah Orlofsky
302 Grove Street
Glencoe, Illinois 60022
Tel: (312) 566-0455

13