## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LAWRENCE H. GRESS, and on behalf of himself and others similarly situated,<br><br>   *Plaintiff,*<br><br>  v.<br><br>COMMONWEALTH EDISON COMPANY, an Illinois corporation; JOHN DOES 1-100,<br><br>   *Defendant.* | No. 20-cv-04405 |
| STEVEN BROOKS, DAVID CHAVEZ, 1540 N. MILWAUKEE LLC d/b/a DSTRKT BAR & GRILL, and CARMICHAEL LEASING CO., INC., for themselves individually and for all class members similarly situated,<br><br>   *Plaintiffs,*<br>  v.<br><br>COMMONWEALTH EDISON COMPANY, d/b/a ComEd, and EXELON CORPORATION<br><br>   *Defendants.* | No. 20-cv-04555 |

| | |
|---|---|
| SOUTH BRANCH LLC, TFO GOLUB BURNHAM LLC, d/b/a THE BURNHAM CENTER, TFO GOLUB IT 2.0 LLC, d/b/a INTERNATIONAL TOWER, and ROCKWELL ON THE RIVER LLC, for themselves individually and for all class members similarly situated,<br><br>      *Plaintiffs*,<br><br>v.<br>COMMONWEALTH EDISON COMPANY d/b/a ComEd; and EXELON CORPORATION,<br><br>      *Defendants.* | No. 20-cv-04980 |
| CITIZENS UTILITY BOARD,<br><br>      *Plaintiff*,<br><br>v.<br><br>COMMONWEALTH EDISON COMPANY, an Illinois corporation,<br><br>      *Defendant*. | No. 20-cv-04405 |

## INTERVENOR-PLAINTIFF CITIZENS UTILITY BOARD'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Intervenor-Plaintiff Citizens Utility Board ("CUB") was granted leave to intervene in this action to represent the interests of Illinois utility consumers. (Order on Mot. to Intervene, dkt. 69.) CUB filed its complaint against Defendant Commonwealth Edison Company ("ComEd") on January 5, 2021, alleging that ComEd bribed elected officials to help pass legislation that fundamentally changed the way electric rates are determined in Illinois. (CUB Compl., dkt. 76.) These allegations are undisputed, as ComEd has admitted to the alleged misconduct and already

paid the federal government $200 million through a Deferred Prosecution Agreement to avoid criminal prosecution. (*See* Deferred Prosecution Agreement, dkt. 75-1.) CUB's complaint seeks civil damages against ComEd on behalf of Illinois utility consumers for violating their rights under the Racketeering Influenced Corrupt Organizations Act ("RICO"), as well as for civil conspiracy and unjust enrichment.

ComEd has moved to dismiss the complaint filed by CUB, as well as the complaint filed by the putative class, in a combined, 27-page brief. (ComEd's Mem., dkt. 85.) The putative class plaintiffs (the "Class Plaintiffs") are filing a response to that motion and have been granted leave to file a corresponding 27-page brief. (Dkt. 91.) Rather than burdening the Court with duplicative legal argument, CUB hereby joins the Class Plaintiffs' brief as to its legal arguments, as CUB's claims are mirrored in the Class Plaintiffs' consolidated complaint. (*Compare* CUB Compl., dkt. 76 (containing RICO, civil conspiracy, and unjust enrichment claims) *with* Class Pls.' Compl., dkt. 75 (containing same claims and others).)

That said, CUB has a unique perspective on the facts of the case, the results of ComEd's bribery, and its significant experience with the ratemaking process before the Illinois Commerce Commission ("ICC"). As a statutory representative of ratepayers in those proceedings, CUB has appeared in the ICC opposite ComEd for decades. In truth, ComEd's argument that "formula" ratemaking did not effectuate an unprecedented shift in the ICC's authority is not accurate. (*See* ComEd's Mem., dkt. 85, at 4–9.) Instead, as discussed below, the entire purpose of Energy Infrastructure Modernization Act ("EIMA") was to cement both the inputs and outputs of traditional ratemaking and displace the ICC on the key issues—turning ratemaking into a process by which ComEd primarily recites its actual costs and then receives a guaranteed rate of return. And certainly, the ICC can do nothing but implement the statute that it is given by the

legislature. As ComEd admitted in its Deferred Prosecution Agreement, it turns out that ComEd bribed elected officials to pass those laws.

For these reasons, the "filed-rate" doctrine does not mean that ComEd gets away with this. Neither the purposes of that doctrine nor its application in prior cases requires that result, as the Class Plaintiffs' brief discusses in depth. The below provides CUB's perspective for the Court's consideration alongside the rest of the briefing.

## I.     "Formula" ratemaking was an unprecedented change to traditional ratemaking.

Utilities have been regulated by Illinois agencies for more than a hundred years. Utilities are natural monopolies, which are closely regulated by the Illinois Commerce Commission ("ICC"), both in how they operate—for instance, in their environmental impacts and ensuring equity between consumers—and in how much they can charge. *See* 220 ILCS 5/1-102 (describing purpose and intent of the Public Utilities Act). Prior to the EIMA, ComEd and utilities like it had to submit a ratemaking application to the ICC if it wanted to increase its rates, consisting of hundreds of pages of financial schedules to justify the higher costs which would then be closely scrutinized by the parties—nearly always including CUB—and the ICC itself. *See* 220 ILCS 5/9-201(a). The Commission would then hold a hearing on the "propriety" of the rate. 220 ILCS 5/9-201(b).

Under traditional ratemaking (which still applies to most utilities in Illinois) ComEd had to justify every dollar that it took from ratepayers' pockets by securing ICC approval that the rate was "just and reasonable." *See* 220 ILCS 5/9-101. Critically, that included the return that ComEd secured on capital improvements. That is, when ComEd spent money to expand its "rate base," it had to justify the return that it should secure from consumers in the form of higher utility rates.

*See* 220 ILCS 5/9-201(c) (giving Commission power to "establish the rates or other charges . . . which [the ICC] shall find to be just and reasonable").

EIMA completely overhauled that process. Rather than proceeding in traditional ratemaking in which ComEd had to justify the return it received, ComEd is now subject to "formula" ratemaking. *See* 220 ILCS 5/16-108.5 (discussing a new "performance-based formula rate"). At its heart, formula ratemaking is designed to "provide[] for *guaranteed* payment of utilities' costs and a rate of return for its investments in infrastructure." *People ex rel. Madigan v. Illinois Commerce Comm'n*, 38 N.E.3d 87, 89 (Ill. App. Ct. 2015) (emphasis added). Under EIMA and its formula ratemaking process, the inputs *and* the outputs of the ratemaking process on ComEd's capital investments are effectively set. *See* 220 ILCS 5/16-108.5(c). And ComEd's rate of return is guaranteed: an averaged return of Treasury bonds, plus a premium of 580 basis points. 220 ILCS 5/16-108.5(c)(3).

The ICC has a very different job under the EIMA's "formula" process. Instead of "establish[ing] the rate" as it does in traditional ratemaking, it reviews the inputs into the formula for accuracy. As ComEd repeatedly emphasized in its first rate filing after EIMA, the ICC's primary job is to "review the filing." 220 ILCS 5/16-108.5(c); *In re Commonwealth Edison Tariffs and Charges Submitted Pursuant to 16-108.5 of the Public Utilities Act*, No. 11-0721 (Ill. Comm. Comm'n), attached hereto as Exhibit A. When the ICC pushed back in that first proceeding, by interpreting EIMA to allow more discretion than ComEd would have liked in establishing the formula inputs, ComEd again flexed its legislative muscle to ensure the inputs were rigged in its favor, and to avoid meaningful ICC discretion.

II.     **ComEd not only secured formula-based ratemaking with EIMA, but further exercised its power over the legislature by "fixing" it two years later.**

After EIMA's passage in November of 2011, ComEd filed its first formula-based ratemaking application. And in May of 2012, the ICC issued its first order under the law. *Commonwealth Edison Co.*, No. 11-0721, 2012 WL 2499567 (May 29, 2012). In that order, the ICC interpreted EIMA to restrict ComEd's earnings on certain cost categories—that is, the ICC pushed back on ComEd's ability to unilaterally determine what its cost inputs into the rate formula should be.

ComEd didn't agree. On June 5, 2012, ComEd applied for a rehearing regarding the ICC's Order, arguing that the ICC erred in refusing to accept ComEd's inputs into the rate formula, including: (i) the Commission's definition of the term "pension asset"—undefined in the original EIMA—to include for ratemaking purposes only ComEd's overfunding of its pension, rather than the far larger sum of pension-related contributions that ComEd requested to recoup; (ii) the Commission's finding that an average "rate base" (the value of the property on which ComEd would receive a return) should be used, rather than the year-end rate base that ComEd advocated for, because the year-end snapshot did not reflect the fact that plants were not in service for the entire year; and (iii) that, for purposes of determining the proper interest rate on the "reconciliation balance" (the difference between what ComEd needed in revenue for a prior year, and what it received), the Commission determined that a "hybrid" interest rate of its own creation should apply, rather than ComEd's desired interest rate (the weighted average cost of capital).

While ComEd made that filing within the ICC, it also jumpstarted its legislative machinery. Two resolutions, Senate Resolution 821 and House Resolution 1157, were filed on June 18, 2012 insisting that "[n]o statutory authority" was given to the ICC to draw conclusions

counter to ComEd on the above issues. 2012 House Res. 1157. The House resolution was adopted on August 17, 2012. But the ICC refused to back down and rejected ComEd's arguments. *In re Commonwealth Edison*, 300 P.U.R. 4th 1 (Oct. 3, 2012).

In 2013, ComEd went back to the legislature once again, and the Illinois General Assembly passed an amendment to EIMA meant to "correct the ICC's interpretations that were identified . . . in Senate Resolution 821 and House Resolution 1157." Senate President John Cullerton, Legislative Transcript, March 14, 2013. This amendment again worked upstream of the ICC to ensure that ComEd would get its way, and remarkably, applied retroactively to the two ICC decisions previously made under EIMA. As the Illinois Appellate Court later observed, "the General Assembly amended the Act . . . expressly superseding and preempting the Commission's order of October 3, 2012. With the amendment, the General Assembly expressly adopted ComEd's calculation of its rate base and the interest ratepayers must pay to ComEd on the reconciliation amount." *Commonwealth Edison Co. v. Illinois Commerce Comm'n*, 8 N.E. 3d 513, 523 (Ill. App. Ct. 2014). Finding itself overruled by the legislature, the ICC had no choice but to cede authority on these issues to the dictates of EIMA. *Id.*[1]

## III. The ratemaking process today.

With formula ratemaking in place, the disputes handled by the ICC today concern interpretation of the Public Utility Act's terms. There is little occasion to challenge ComEd's expenditures that form its rate base because the entire assessment is predicated on ComEd's "actual costs"—which all come from a required filing, the FERC Form 1—so challenging these

---

[1] This brief provides additional context on the ratemaking process under "formula" ratemaking instituted by EIMA. Also at issue in the case is the Future Energy Jobs Act ("FEJA"), which continued formula ratemaking. ComEd points out that CUB supported that bill, which is true but irrelevant. CUB takes the legislative landscape as it finds it; ComEd can't claim that CUB's ultimate support in a process irrevocably tainted by bribery somehow washes ComEd's hands clean. As the Class Plaintiffs' brief discusses, damages are a matter for trial.

costs would largely prove futile. *See* 220 ILCS 5/16-108.5. While the ICC theoretically retains discretion to determine whether ComEd's expenditures are "just and reasonable," and "used and useful," challenges to ComEd's ratemaking now center on methods of accounting for certain costs.

For these reasons—and as explained in full in the Class Plaintiffs' brief—ComEd's argument that the ICC has effectively blessed the charges passed on to consumers is a falsity. The ICC implements the statute that it is given, which ComEd *admittedly* engaged in legislative bribery to help secure. When the ICC didn't do what ComEd wanted, ComEd just went to the legislature again in the 2013 trailer bill to EIMA—proving the extent of the control it had.

For this reason, the filed-rate doctrine does not allow ComEd to get away scot-free with the money its scheme overcharged consumers. The doctrine arises from two underlying principles: (1) the need to prevent carriers from engaging in price discrimination between utility consumers, and (2) the preservation of the exclusive role of agencies in setting and approving uniform rates. *See Arsberry v. Illinois*, 244 F.3d 558, 562 (7th Cir. 2001). Neither concern is remotely implicated here. CUB is present in the action as a statutorily-mandated representative of utility consumers, and seeks a remedy for all of them. *See* 220 ILCS 10/5(2)(e). And the complaint does not ask the Court to set aside the judgment of the ICC—the ICC did not, and cannot, pass judgment on whether the formula rate process itself was the product of legislative bribery. In cases where the Court is neither being asked to substitute its judgment for the well-considered judgment of an agency, nor institute a discriminatory pricing scheme, the filed-rate doctrine does not apply. *E.g.*, *Ice Cream Liquidation, Inc. v. Land O'Lakes, Inc.*, 253 F. Supp. 2d 262, 276 (D. Conn. 2003) ("Thus, as we interpret plaintiff's complaint, plaintiff is not asking the Court to engage in judicial rate-making by substituting its judgment for that of the USDA, nor to

create discriminatory rates that would apply to some handlers and not others."). ComEd's motion should be denied.

## **CONCLUSION**

Plaintiff-Intervenor Citizens Utility Board respectfully requests that the Court deny Commonwealth Edison's Motion to Dismiss (dkt. 84) and grant any further relief as may be appropriate and just.

Respectfully submitted,

Dated: March 8, 2021

/s/Ari J. Scharg
One of Plaintiff-Intervenor's Attorneys

Jay Edelson
jedelson@edelson.com
Ari J. Scharg
ascharg@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Michael Ovca
movca@edelson.com
EDELSON PC
350 North LaSalle, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589-6370
Fax: (312) 589-6378